■ In the Matter of LAWRENCE C., Respondent, v ANTHEA P., Appellant. [912 NYS2d 216]—

Order, Family Court, New York County (Elizabeth Barnett, Ref.), entered on or about July 7, 2009, which, insofar as appealed from, as limited by the briefs, granted the petition to the extent of directing that the subject children reside primarily with petitioner father upon attaining the age of four and awarded final decision-making authority to the father concerning the children's education, extracurricular activities and medical care, unanimously reversed, on the facts, without costs, the direction to change the division of custodial time between the parties upon the children's attaining the age of four and the award of final decision-making authority vacated, the petition denied insofar as it seeks an award of greater custodial time to the father than he currently enjoys, and the matter remanded for further proceedings regarding other relief sought by the petition.

The parties met through a Web site advertisement placed by respondent mother seeking a man with whom to conceive a child. Thereafter, the parties agreed to try to conceive through artificial insemination, contemplating that petitioner father would be an active parent to any resulting child. Since the subject twin children were born in June 2007, the parties have shared custody, but the mother has been the primary custodian. Currently, in every two-week period, the children spend 10 nights with the mother and four nights with the father.

As a result of disagreements between the parties that began to arise even before the children were born, the father commenced this proceeding seeking primary custody in October 2007. The order appealed from (rendered by a referee pursuant to the parties' stipulation) directs, inter alia, that, "upon attaining the age of 4 years and enrollment in school," the children shall reside primarily with the father. Specifically, the order directs that the children, after the change in the division of custody, are to be in the mother's custody three out of every four weekends (Friday 5:00 P.M. to Sunday 5:00 P.M.) and from 5:00 P.M. to 7:30 P.M. two Wednesdays per month (those preceding and following the first Saturday of each month), and in the father's custody the remainder of the time. On the mother's appeal, we reverse and vacate the direction to alter custodial arrangements when the children attain the age of four.

The touchstone of a child custody determination is "the best interest of the child, and what will best promote its welfare and happiness" (Domestic Relations Law § 70 [a]). Although each case must be decided on its particular facts, the courts, out of concern for maintaining stability in a child's life, have long held

that "[c]hanges in conditions which affect the relative desirability of custodians . . . are not to be accorded significance unless the advantages of changing custody outweigh the essential principle of continued and stable custody of children" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 550 [1976]; *see also Alan G. v Joan G.*, 104 AD2d 147, 153 [1984]; *Matter of Larkin v White*, 64 AD3d 707, 709 [2009]; *Matter of Moorehead v Moorehead*, 197 AD2d 517, 519 [1993], *appeal dismissed* 82 NY2d 917 [1994]; *Meirowitz v Meirowitz*, 96 AD2d 1030 [1983], *appeal dismissed* 60 NY2d 1015 [1983]). Hence, "[p]riority, not as an absolute but as a weighty factor, should, in the absence of extraordinary circumstances, be accorded to the first custody awarded in litigation or by voluntary agreement" (*Matter of Nehra v Uhlar*, 43 NY2d 242, 251 [1977]). In short, the parent seeking a change in custody arrangements bears the burden of proof that the change is in the child's best interests (*see People ex rel. Wasserberger v Wasserberger*, 42 AD2d 93, 96 [1973], *affd* 34 NY2d 660 [1974] [petition to change custody denied because petitioner "has shown nothing to warrant a change"]; *Matter of Lumbert v Lumbert*, 229 AD2d 683, 684 [1996] [where "consideration of an array of factors produced no clear preference, . . . resort to stability and maintenance of the status quo as the pivotal factor(s)" was justified]).

Bearing in mind that, in matters of child custody, the authority of the Appellate Division is as broad as that of the trial court (*Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946, 947 [1985]) and that the Referee's finding that both parties are fit parents is unchallenged, we find no support in the record for the conclusion that the relative advantage of giving the father primary custody is so great as to justify moving four-year-old children from the primary custody of their mother, who has been their primary caregiver since their birth. None of the grounds on which the Referee ordered the future change in custody are so compelling as to warrant the attendant disruption of the children's lives. First, the Referee found that the father was "more likely to promote meaningful contact and a relationship between the other parent and the children." However, the Referee acknowledged that the mother's conduct never reached the level of deliberately frustrating, denying or interfering with the father's parental rights so as to raise doubts about her fitness to act as a custodial parent (*see Victor L. v Darlene L.*, 251 AD2d 178, 179 [1998], *lv denied* 92 NY2d 816 [1998]). It appears to us that, while each parent would do well to adopt a more cooperative attitude toward the other, the past deficiencies in the mother's conduct are not so great as to warrant displacing her as the primary custodial parent. Nor is a change in custody war-

ranted by the Referee's speculation (based solely on lay testimony) that the children, by reason of their nontraditional family background, would more easily fit in with other children in the father's West Village neighborhood than in the mother's predominantly Greek-American neighborhood in Queens. Further, we find that the record does not support the Referee's view that the father is more likely to place the children's needs before his own. In sum, because "the advantages of the change [do not] greatly outweigh the advantages of continuity and stability" (*Matter of Fountain v Fountain*, 83 AD2d 694, 694 [1981], *affd* 55 NY2d 838 [1982]), the Referee improvidently ordered the future change in custody.

We remand the matter to Family Court for consideration of any other relief sought by the petition (including alteration of final decision-making authority) in light of our determination that custody arrangements will remain unchanged until a material change of circumstance is demonstrated. In this regard, we vacate Family Court's award to the father of final decision-making authority in certain spheres, which award appears to have been predicated on the now-vacated grant of primary custody to him. Concur—Saxe, J.P., Friedman, Moskowitz, Freedman and Román, JJ.