Matter of Edwin E.R. v Monique A.-O. (2020 NY Slip Op 06347)





Matter of Edwin E.R. v Monique A.-O.


2020 NY Slip Op 06347


Decided on November 05, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 05, 2020

Before: Renwick, J.P., Manzanet-Daniels, Gesmer, Oing, JJ. 


Docket No. V-26730-11/18D V-27191-11/18C Appeal No. 12160 Case No. 2020-00129 

[*1]In the Matter of Edwin E.R., Petitioner-Respondent,
v
Monique A.-O., Respondent-Appellant.


Elisa Barnes, New York, for appellant.
Hector L. Santiago, Kew Gardens, for respondent.
Janet Neustaetter, The Children Law Center, Brooklyn (Laura Solecki of counsel), attorney for the child.



Order, Family Court, Bronx County (Emily Morales-Minerva, J.), entered on or about November 26, 2019, which, inter alia, granted the petition for modification of a prior order of custody to grant sole physical and legal custody of the subject child to petitioner father, with parenting time to respondent mother on alternate weekends, unanimously reversed, on the facts and in the exercise of discretion, without costs and the matter remanded to the Family Court for further proceedings consistent with this order.
Where parties have entered into a custody order on consent, a court may not hold a hearing on a motion for a transfer of custody without first determining that there has been a sufficient change in circumstances since the entry of the order (Sergei P. v Sofia M., 44 AD3d 490 [1st Dept 2007]). Here, the court's finding of changed circumstances did not have a sound and substantial basis but was instead based on an erroneous assumption. In 2012, the parties had entered into a custody order on consent, giving the mother primary physical and sole legal custody. The mother and father had each moved to modify the custody order, which caused the court to assume that they both agreed that there had been a substantial change in circumstances. However, the mother only alleged as a change in circumstances that the father had failed to provide her with sufficient notice before taking the child out of state.[FN1] The father's petition alleged, inter alia, that circumstances had changed in that the child slept most nights at the home of his maternal grandmother, rather than at the home of his mother. Each party denied the allegations in the other's petition. Accordingly, the court erred in finding that the petitions themselves constituted a sound and substantial basis for a finding of changed circumstances. Therefore, the court lacked a basis for holding a hearing on the father's motion to change custody.
Even if the Family Court had properly found that there was a change of circumstances, we would nevertheless reverse the court's finding on the merits. The court granted the father's motion to transfer primary physical and sole legal custody to him on its finding that the child resided primarily with his grandmother, but we find that the record does not support this finding.
The court based its finding solely on an in camera interview with the child, then eight years old, and the hearsay testimony of the father. The transcript of the in camera interview shows that the child made inconsistent statements about where he spent the majority of his time. However, even if he had made a definitive declaration, the Court of Appeals has admonished that courts should "not use any information, which has not been previously mentioned and is adverse to either parent, without in some way checking on its accuracy during the course of the open hearing," because
"there are grave risks involved in these private interviews. A child whose home is or has been torn apart is subjected to emotional stresses that may produce completely distorted images of its parents and its situation. Also, its feelings may be transient indeed, and the reasons for its preferences may indicate that no weight should be given the child's choice. Without a full background on the family and the child, these interviews can lead the most conscientious Judge astray" (Matter of Lincoln v Lincoln, 24 NY2d 270, 273 [1969]; see also Matter of Shaver v Bolster, 155 AD3d 1368, 1369-1370 [3d Dept 2017]).
In fact, this admonition is well taken in this case, where the record provides a substantial basis for concluding that either or both parents spoke to the child about the proceeding before his interview with the court.
Moreover, the father's testimony cannot serve either as an adequate check on the accuracy of any of the child's statements or an adequate independent basis for the court's finding, since it was pure hearsay. The father did not claim to have any independent knowledge of where the child spent his time, but rather testified that that the grandmother had told him the child spent most nights at her home.[FN2] The father was unable to state when he had this conversation with the grandmother or give any other details. The grandmother never testified. Although the mother's attorney failed to object to this testimony, the court could not rely on it as the basis for a determination that would upend the custody order that had been in place for virtually the entirety of the child's life.
Moreover, the mother directly contradicted the father's testimony. The mother testified that the child lived with her, that the grandmother provided childcare before and after school on Mondays through Thursdays when the mother worked, and that the child slept over at the grandmother's home two to three nights per month. The Family Court found her testimony on this point to be incredible, and did not rely on it. Ordinarily, we defer to the trial court's determinations as to credibility (see Eschbach v Eschbach, 56 NY2d 167, 173 [1982]), but this record does not require that deference for several reasons. First, the court stated that it found the mother's testimony incredible because it conflicted with the father's "credible testimony"; however, as set forth above, we find that the father's testimony was not credible because it was based solely on hearsay. Secondly, the court also stated that its finding of credibility was based on the conflict of the mother's testimony with the "presentation" of the child's attorney, but the attorney for the child did not introduce any testimony and his arguments are not testimony. Third, we note that the court did not find any other aspect of the mother's testimony to be incredible.
Finally, even if the court had had an adequate basis for finding that the child spent substantial time at the home of the maternal grandmother, we would still remand because this record is inadequate to determine whether awarding the father primary physical and sole legal custody was in the child's best interests. The father's counsel presented no evidence about where the child would go to school if the father became the primary physical custodian, and whether the father's work schedule would permit him to spend more time with the child than the mother did. The court has a "parens patriae responsibility to do what is in the best interests of the child[]" (Matter of Zavion O. [Donna D.], 173 AD3d 28, 35 [1st Dept 2019][internal quotation marks omitted]), which includes an obligation to inquire into the child's emotional, intellectual, physical, and social needs when determining custody (see Koppenhoefer v Koppenhoefer, 159 AD2d 113, 116 [2d Dept 1990]). The court did not discharge this obligation.
Specifically, a transfer of custody to the father would likely require that the child change schools because the parties reside in different zip codes. However, the record showed that the child was doing well in his school which he enjoyed and had attended since pre-kindergarten. It is undisputed that the mother was involved with the child's education, and that the father was not.[FN3] Indeed, the father admitted that he had been unable to attend parent-teacher meetings because of his work schedule. However, the court did not receive any evidence about where the child would attend school if custody was transferred to the father, or what impact the change of schools and of primary educational responsibility would have on the child.
Moreover, the court heard no evidence about the father's work schedule, except that it prevents him from attending parent-teacher conferences. Since the father testified that he resided with his girlfriend and her 14-year-old daughter, it is unclear whether awarding the father primary physical custody could result in granting de facto physical custody to a nonparent with no biological relationship to the child. Given that the court was concerned as to whether the child was spending substantial time with the maternal grandmother instead of with either parent, this issue should also have been a major concern of the court in this case.
Accordingly, we remand for a determination as to whether there are changed circumstances, and if the court so finds, for further proceedings to determine whether the modification proposed by the father is in the child's best interests.
Finally, even if the court had sufficient information to find that transferring custody to the father was in the child's best interests, we would exercise our broad authority on matters of child custody (Matter of Lawrence C. v Anthea P., 79 AD3d 577, 579 [1st Dept 2010], citing Matter of Louise E.S. v W. Stephen S., 64 NY2d 946, 947 [1985]) and remand for the court to award the mother at least weekly visitation with the child, since she was the child's sole custodian for his entire life, was a fit parent, and the court found that she and the child shared a warm and loving bond.
We have considered the mother's remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 5, 2020



Footnotes

Footnote 1: Family Court dismissed the mother's modification petition after hearing testimony on it, and finding that the mother failed to establish her prima faciecase. The mother has not appealed from that ruling.

Footnote 2: The father also claimed that the child had made a similar statement. However, after the mother's attorney objected, the court admitted the statement under the state of mind exception to the rule against hearsay, and not for its truth.

Footnote 3: The court found that, "given the court history between the parties, the father finds it difficult to develop a working relationship with the school administration."